## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

DAVID BIRD,

        Plaintiff,

vs.

NEVADA HIGHWAY PATROL, et al.,

        Defendants.

Case No. 2:14-cv-02114-JAD-CWH

**SCREENING ORDER AND REPORT AND RECOMMENDATION**

Presently before the court is Plaintiff David Bird's application to proceed *in forma pauperis* (ECF No. 1), filed on December 12, 2014. Also before the court is Plaintiff's civil rights complaint filed under 42 U.S.C. § 1983. (Compl. (ECF No. 1-1).) Plaintiff is a pro se inmate in the custody of the Nevada Southern Detention Center.

### I.   *IN FORMA PAUPERIS* APPLICATION

Plaintiff submitted the declaration required by 28 U.S.C. §1915(a) showing an inability to prepay fees and costs or to give security for them. Based on the information regarding Plaintiff's financial status, the court finds Plaintiff is unable to pay an initial installment toward the full filing fee required under 28 U.S.C. § 1915(b). However, Plaintiff will be required to make installment payments toward the full $350.00 filing fee when he has funds available. Plaintiff's request to proceed *in forma pauperis* therefore will be granted.

### II.   SCREENING COMPLAINT

#### A.   Background

Plaintiff alleges that at approximately 3:40 a.m. on December 31, 2012, Defendant Nevada Highway Patrol Trooper White initiated a traffic stop involving Plaintiff near Sun Valley Drive and Nellis Boulevard. (Compl. (ECF No. 1-1) at 3.) The traffic stop culminated in a chase that ended at Interstate 95 and Jones Boulevard at approximately 3:55 a.m. (*Id.*) At approximately 4:03 a.m., Plaintiff was shot in the leg by Trooper May and in the head by Trooper Pedraza while he had his

1  back to the troopers.  (*Id.* at 2-3, 7.)  Plaintiff contends that Troopers May and Pedraza shot him on
2  an order from Trooper Gisi.  (*Id.* at 7.)
3    Plaintiff alleges that Troopers May and Pedraza's use of lethal force in a "non-lethal
4  situation" violates procedure.  (*Id.* at 2.)  Plaintiff alleges that Trooper Pedraza repeatedly stated
5  "shut up and die and save us some work."  (*Id.* at 7.)  Plaintiff further alleges that Trooper Lecko
6  "violated [him] verbally and physically causing permanent and long lasting damage."  (*Id.* at 2.)
7  Specifically, he alleges Trooper Lecko "slammed [Plaintiff's] head down into the rocks while
8  pushing down on the gunshot wound."  (*Id.* at 7.)  He also alleges that Trooper Mendoza refused to
9  get him medical treatment for twenty to twenty-five minutes after the shooting and states that this
10  delay violates procedure.  (*Id.* at 3.)  Plaintiff alleges Trooper May handcuffed him so tightly that
11  his wrists were swelling under the pressure, resulting in scarring and nerve damage.  (*Id.* at 8.)
12  Plaintiff claims that he has suffered "permanent injuries and scarring due to the procedural
13  mishandling of this incident."  (*Id.* at 3.)
14    Plaintiff contends that the computer-aided dispatch ("CAD") reports from the chase are
15  incomplete and that although the chase started at 3:40 a.m., the audiovisual equipment in
16  Defendant Trooper White's cruiser did not start until 3:55 a.m.  (*Id.* at 3-4.)  According to Plaintiff,
17  the audiovisual equipment should have started when Trooper White activated his cruiser's lights.
18  (*Id.* at 3.)  Plaintiff claims it "is impossible and highly improbable that Trooper White's cruiser
19  A/V worked fine after 3:55 a.m. but not before while he was chasing [him].  A full 15 minutes of
20  evidence is just missing."  (*Id.* at 4.)  Plaintiff claims that the missing evidence would "show that
21  Trooper White did not have probable cause to stop [him] as [he] had come to a full stop, prior to
22  White initiating his lights and A/V equipment."  (*Id.*)  Plaintiff further claims that the stop "was
23  illegal and due to an informants [sic] bad information."  (*Id.*)  Additionally, Plaintiff alleges that
24  although Trooper Pedraza's cruiser was closest to the place where Plaintiff was laying after being
25  shot, "[Trooper Pedraza's] audio was completely missing from the point of [him] being shot
26  through [his] removal from the scene."  (*Id.* at 5.)  As a result of the missing audio recordings,
27  Plaintiff claims that his "pleas for help and medical treatment along with Troopers [sic] verbal
28  threats to [him] no longer exist . . . ."  (*Id.*)  Plaintiff contends that the high-speed chase, which

occurred without operational police cruiser lights, cameras, or audio, endangered him and innocent bystanders. (*Id.* at 6.)

Additionally, Plaintiff alleges that Assistant Federal Public Defender Shari Kaufman initially stated that she would be filing motions to suppress evidence and to dismiss charges but that she did not communicate with him for seven months and ultimately "refused to help [him] and told [him] he could fire her because she wouldn't be challenging the NHP or Metro in any way on Bird's case." (*Id.* at 3-5.) He further alleges that Defendant Nevada Highway Patrol will not provide to him CAD reports or audiovisual evidence from Trooper White's cruiser. (*Id.* at 2.)

Plaintiff now brings a complaint under 42 U.S.C. § 1983, asserting claims for violation of his due process and equal protection rights against the Nevada Highway Patrol and the Federal Public Defender (claims one and two) and cruel and unusual punishment (claim three) against the arresting officers, Nevada Highway Patrol Troopers May, White, Pedraza, Lecko, and Mendoza. (*Id.* at 4-8.) Plaintiff seeks monetary damages. (*Id.* at 11.)

### B.  Screening Standard

Federal courts must conduct a preliminary screening in any civil case "in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b)(1),(2). In addition to the screening requirements under § 1915A, under the Prison Litigation Reform Act, the court must dismiss the case if "the allegation of poverty is untrue" or if the court determines the action "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." *Id.* § 1915(e)(2).

Dismissal for failure to state a claim under § 1915A incorporates the standard for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014). To survive § 1915A review, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The court liberally construes pro se civil rights complaints and

may only dismiss them "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

In considering whether the complaint is sufficient to state a claim, all allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys. Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). Although the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.* Unless it is clear the complaint's deficiencies could not be cured through amendment, a pro se plaintiff should be given leave to amend the complaint with notice regarding the complaint's deficiencies. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

**C.     Analysis**

Title 42 U.S.C. § 1983 provides that "[e]very person who, under color of [law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." Section 1983 does not create any substantive rights, but provides a method for enforcing rights contained in the Constitution or federal statutes. *Crowley v. Nev. ex. rel. Nev. Sec'y of State*, 678 F.3d 730, 734 (9th Cir. 2012). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "(1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Williams v. California*, 764 F.3d 1002, 1009 (9th Cir. 2014) (quotation omitted).

    *1.     Claims Against Federal Public Defender Under 42 U.S.C. § 1983*

The court understands Plaintiff to be alleging that Defendant Assistant Federal Public Defender Shari Kaufman violated his due process and equal protection rights by failing to file motions to suppress evidence and to dismiss charges. The court further understands Plaintiff to be alleging Defendant Kaufman violated his due process and equal protection rights by refusing to challenge the Nevada Highway Patrol for its failure to disclose evidence in discovery. Additionally, Plaintiff alleges Defendant Kaufman violated his equal protection rights by denying

4

him fair and objective counsel. Although Plaintiff does not include specific factual allegations regarding a related criminal case, liberally construing Plaintiff's complaint, the court understands Plaintiff to be alleging that Defendant Kaufman was acting in her capacity as his attorney in a criminal case related to the incident that occurred on December 31, 2012.

A defendant has acted under color of state law where he or she has "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (quotation omitted). When public defenders are acting in their role as advocate for a defendant in a criminal case, they are not acting under color of state law for § 1983 purposes. *Jackson v. Brown*, 513 F.3d 1057, 1079 (9th Cir. 2008). Public defenders do not act under color of state law because "a defense lawyer is not, and by the nature of his function cannot be, the servant of an administrative superior. Held to the same standards of competence and integrity as a private lawyer, a public defender works under canons of professional responsibility that mandate his exercise of independent judgment on behalf of the client." *Polk Cty. v. Dodson*, 454 U.S. 312, 321 (1981) (internal citation omitted).

Here, Plaintiff alleges Ms. Kaufman was acting in her role as a defense attorney in declining to file motions to suppress or to dismiss or to challenge the Nevada Highway Patrol. He also alleges she was acting in her role as a defense attorney in denying him fair and objective counsel. Given that a public defender acting in her capacity as a defense lawyer is not acting under the color of law, Plaintiff fails to state a claim against Ms. Kaufman under § 1983 as a matter of law. Given that amendment would be futile, the court will recommend that the claims against Ms. Kaufman be dismissed without leave to amend.

2.     *Municipal Liability Under 42 U.S.C. § 1983*

Plaintiff alleges the municipal defendant, Nevada Highway Patrol, violated his due process rights by refusing to provide him with audiovisual and CAD reports in the related criminal case. Plaintiff alleges that this evidence would show that there was not probable cause for his arrest. He further alleges Defendant Nevada Highway Patrol violated his equal protection rights because Trooper White endangered Plaintiff and innocent bystanders by participating in a high-speed chase without operational police cruiser lights, audio, or video recording.

A municipality is a "person" subject to liability under 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 (1978)). "Municipalities, their agencies, and their supervisory personnel cannot be held liable under section 1983 on a theory of respondeat superior." *Shaw v. State of Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 610 (9th Cir. 1986). But they can be "held liable for deprivations of constitutional rights resulting from their policies or customs." *Id.* A "policy" is "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (quotation omitted). "A 'policy' can be one of action or inaction." *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (internal citations omitted). Thus, "a plaintiff can allege that through its omissions the municipality is responsible for a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional, the municipality did not direct the employee to take the unconstitutional action, and the municipality did not have the state of mind required to prove the underlying violation." *Long*, 442 F.3d at 1185-86.

One way to demonstrate municipal liability is to show a constitutional violation occurred due to the municipality's inadequate training of its employees. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). Specifically, "a failure to train police officers may serve as the basis for liability under § 1983 where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Gibson v. County of Washoe*, Nev., 290 F.3d 1175, 1194 (9th Cir. 2002) (quotation omitted). Deliberate indifference occurs when policymakers continue to adhere "to an approach that they know or should know has failed to prevent tortious conduct by employees." *Long*, 442 F.3d at 1186 (quotation omitted). Deliberate indifference also can occur when "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Id.* (quotation omitted). In other words, a plaintiff must establish that the training program is inadequate and the inadequate training represents municipal policy. *Id.* Additionally, the inadequate training must be widespread. *Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007). Evidence that a

single officer was trained inadequately does not establish a municipal policy of inadequate training. *Id.* at 484. Finally, for a policy to be the moving force behind the deprivation of a constitutional right, the plaintiff must establish that "the injury would have been avoided had proper policies been implemented." *Long*, 442 F.3d at 1190 (quotation omitted).

Here, Plaintiff alleges his equal protection rights were violated by the high-speed chase, which endangered him and others. He further alleges his due process rights were violated by Defendant Nevada Highway Patrol's refusal to provide him with audiovisual and CAD reports during discovery in the related criminal case. Plaintiff fails to allege, however, that Defendant Nevada Highway Patrol had a policy or custom that resulted in these equal protection and due process violations, or that Defendant Nevada Highway Patrol's failure to train its employees resulted in the equal protection and due process violations. Plaintiff therefore fails to state a claim for municipal liability under 42 U.S.C. § 1983. Accordingly, the court will recommend that the claims against Defendant Nevada Highway Patrol be dismissed with leave to amend.

Additionally, Plaintiff does not include factual allegations that would support the underlying equal protection and due process violations. Regarding his equal protection claim, he alleges the high-speed chase was dangerous to Plaintiff and to innocent bystanders. However, he does not allege facts that "show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class," which is required to state a claim under 42 U.S.C. § 1983 for a violation of the equal protection clause of the Fourteenth Amendment. *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (internal quotation marks and citation omitted).

Regarding his due process claim, because Plaintiff does not include any allegations regarding his conviction or sentence in the related criminal case, it is unclear whether Plaintiff is incarcerated as a result of the incident at issue in this case. However, given that Plaintiff is alleging Defendant Nevada Highway Patrol refused to provide him with audiovisual and CAD reports during discovery in the related criminal case that would have demonstrated Officer White did not have probable cause to arrest him, it is the court's understanding that Plaintiff may be attempting to invalidate his conviction and/or sentence by way of this § 1983 claim. Plaintiff is advised that to

the extent he is attempting to invalidate an underlying conviction related to this incident, if his § 1983 claim alleges constitutional violations that would necessarily imply the invalidity of his conviction or sentence, then he must establish that the underlying sentence or conviction has been invalidated on appeal, by a habeas petition, or through some similar proceeding. *See Heck v. Humphrey*, 512 U.S. 477, 483-87.

         3.   *Claims Against the Officers Under 42 U.S.C. § 1983*

    Plaintiff alleges that the arresting officers violated his Eighth Amendment right to be free from cruel and unusual punishment by shooting him in the leg and in the head, slamming his head into the rocks, handcuffing him tightly, denying him medical treatment, and making verbally abusive remarks. The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishment. U.S. Const. amend. VIII. This prohibition applies to those who have been convicted of a crime. *Graham v. Connor*, 490 U.S. 386, 393 & n.6 (1989) (stating that the "Eighth Amendment standard applies only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." (quotation omitted)).

    Here, Plaintiff cannot state a claim for cruel and unusual punishment under the Eighth Amendment as a matter of law because he does not allege the shooting and other events happened after he was found guilty of a criminal offense. Rather, the complaint indicates he was shot shortly after the high-speed chase, before any adjudication before a court. Even if he was under arrest at the time he was shot, pre-trial detainees lack standing to bring an Eighth Amendment claim. *See Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010) ("the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's protection against cruel and unusual punishment, applies to pretrial detainees."). Liberally construing Plaintiff's complaint, however, the court understands Plaintiff to be alleging that excessive force was used in his arrest. The court therefore will recommend that Plaintiff be given leave to amend his cruel and unusual punishment claim to state an excessive force claim under the Fourth Amendment.

    If Plaintiff chooses to file an amended complaint, the document must be titled "Amended Complaint." The amended complaint must contain a short and plain statement describing the date and nature of the incident at issue, the parties involved, and the facts demonstrating that his civil

rights were violated. Although the Federal Rules of Civil Procedure adopt a flexible pleading standard, Plaintiff still must give the defendants fair notice of the reasons Plaintiff claims they violated his civil rights.

Additionally, Plaintiff is advised that if he files an amended complaint, the original complaint (ECF No. 1-1) no longer serves any function in this case. As such, the amended complaint must be complete in and of itself without reference to prior pleadings or other documents. The court cannot refer to a prior pleading or other documents to make Plaintiff's amended complaint complete.

### III.   CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Application for Leave to Proceed *In Forma Pauperis* (ECF No. 1) is GRANTED. Plaintiff will not be required to pay an initial installment fee and is permitted to maintain this action to conclusion without prepaying fees or costs or giving security for them. However, under 28 U.S.C. § 1915(b), Plaintiff will be required to make installment payments toward the full $350.00 filing fee when he has funds available. This order does not extend to the issuance of subpoenas at government expense.

IT IS FURTHER ORDERED that under 28 U.S.C. § 1915(b), the Corrections Corporation of America ("CCA") must pay to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits to the account of Plaintiff David Bird, #48718-048, in the months that the account exceeds $10.00, until the $350.00 filing fee has been paid for this case. The Clerk of Court must send a copy of this order to the CCA Accounting Supervisor, 2190 East Mesquite Avenue, Pahrump, Nevada, 89060.

IT IS FURTHER ORDERED that if this action is dismissed or is otherwise unsuccessful, the full $350.00 filing fee is still due under 28 U.S.C. § 1915.

IT IS FURTHER ORDERED that the Clerk of the Court must file Plaintiff's complaint (ECF No. 1-1).

IT IS RECOMMENDED that the claims against Defendant Shari Kaufman be DISMISSED without leave to amend as amendment would be futile.

IT IS FURTHER RECOMMENDED that the claims against Defendants Nevada Highway

Patrol and Troopers May, White, Pedraza, Lecko, and Mendoza be DISMISSED without prejudice for failure to state a claim upon which relief can be granted, with leave to amend.

IT IS FURTHER RECOMMENDED that the court set a deadline for Plaintiff to file an amended complaint.

### NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1).  A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation.  Local Rule IB 3-2(a).  Failure to file a timely objection may waive the right to appeal the district court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: January 23, 2017

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**